# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1378V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | * | |
| JODI FISKE, | * * * | **UNPUBLISHED** |
| Petitioner, | * * | |
| v. | * * | Special Master Katherine E. Oler |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * * | Filed: April 20, 2022 |
| | * * | Interim Attorneys' Fees and Costs |
| Respondent. | * * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | * | |

*Andrew D. Downing*, Van Cott & Talamante, PLLC, Phoenix, AZ, for Petitioner.
*Martin Galvin*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On September 28, 2017, Jodi Fiske ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program") alleging that developed an isolated small fiber neuropathy from the influenza ("flu") vaccination she received on September 29, 2014. Pet. at 1, ECF No. 1. At the time, Petitioner was represented by Mr. Franklin Caldwell.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

On October 26, 2018, Petitioner filed a motion for interim fees for work performed by Mr. Caldwell, which I subsequently granted. ECF Nos. 25, 32. Mr. Caldwell withdrew from representation on February 14, 2019. ECF No. 29. That same date, Mr. Downing was substituted in as Petitioner's counsel. ECF No. 30.

On November 5, 2021, Petitioner filed an application for interim attorneys' fees and costs requesting $62,952.00 in attorneys' fees and $35,337.46 in costs, for a total of **$98,289.46**. Fees App. at 6, ECF No. 63. On March 11, 2022, Respondent filed a response stating it is within my discretion to award interim attorneys' fees and costs. Fees Resp., ECF No. 68. Respondent "defers to [me] to determine whether or not petitioner here has met the legal standard for an interim fees and costs award." *Id.* at 2-3.

For the reasons discussed below, I hereby **GRANT IN PART** Petitioner's application award a total of **$89,166.86** in interim attorneys' fees and costs.

### I.     Legal Standard

#### A. Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought her petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*,

2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

3

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.     Discussion

### A.     Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). As her Interim Motion points out, by the time post-hearing briefing concluded in this case, Petitioner, and her counsel have been litigating this claim for more than five years and have not received an interim fee award for present counsel. ECF No. 63 at 2-3.

Successive motions for awards of interim fees are typically disfavored absent compelling circumstances. *See e.g. Kottenstette v. Sec'y of Health & Hum. Servs.*, No. 15-1016V, 2019 WL 5709372, at *2 (Fed. Cl. Spec. Mstr. Oct. 11, 2019) (granting a second interim fee award only in light of a motion for review which would inevitably add "an indefinite period of…litigation before…resolution of the case); *Heinzelman v. Sec'y of Health & Hum. Servs*, No. 07–01V, 2012 WL 1119389 (Fed. Cl. Spec. Mstr. Mar. 13, 2012) (Petitioner was not entitled to a third award of interim attorneys' fees because she failed to establish the special circumstances needed for such an award); *see also Otto v. Sec'y of Health & Hum. Servs.*, No. 16-1144, 2020 WL 1304189 (Fed. Cl. Spec. Mstr. Feb. 10, 2020) (holding that granting successive interim awards strains judicial resources and is contrary to the underlying intent of the Vaccine Act).  To demonstrate undue hardship, a Petitioner must demonstrate a *compelling* reason for a successive award of interim fees and costs.

Although an award of interim fees has already been granted in this case, Petitioner had different counsel at that time. This is therefore Petitioner's first interim fee application with respect to work performed by Mr. Downing. Petitioner and her counsel have been litigating this case for over five years.

I also note that the COVID-19 epidemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 U.S. Claims LEXIS 1250 at *14-15 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees). Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of a second award of interim attorneys' fees and costs.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is a much lower standard than the burden to prove entitlement to compensation by preponderant evidence. In making a reasonable basis determination, I must look at a totality of circumstances, taking into account the factual basis for the claim, and the medical and scientific support offered. An entitlement hearing was held on April 6-7, 2021. *See* Minute Entry on 4/7/2021. Dr. Laura Boylan, a board-certified neurologist, has submitted two expert reports, in which she has opined that the influenza vaccination Petitioner received provoked an immune/inflammatory response which caused or contributed to petitioner's small fiber neuropathy. *See* Exs. 14, 37. With the medical records and expert reports provided, such evidence is sufficient to justify the filing of this petition, thus I find the petition was filed with reasonable basis.

As there is no other reason to deny a second award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

## C. Attorneys' Fees

Petitioner requests a total of $62,952.00 in attorneys' fees. Fees App. at 6.

### i. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner's counsel, Mr. Andrew Downing, requests to be compensated at a rate of $385.00 per hour for work performed from 2018-2021 and Courtney Van Cott requests to be compensated at a rate between $205.00 and $275.00 per hour for work performed between 2019-2021. *See* Fees App., Ex. A at 23. Mr. Downing's and Ms. Van Cott's requested rates are consistent with *McCulloch* and with what both attorneys have been previously awarded in the Program. *See, e.g.*, *McCall v. Sec'y of Health & Hum. Servs.*, No. 2021 U.S. Claims LEXIS 2987 (Fed. Cl. Spec. Mstr. Dec. 15, 2021); *Olschansky v. Sec'y of Health & Hum. Servs.*, No. 17-1096, 2020 WL 1027681 at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2020); *Butler v. Sec'y of Health & Hum. Servs.*, No. 16-1027V, 2019 WL 1716073, at *2 (Fed. Cl. Spec. Mstr. Mar. 20, 2019); *Carey on behalf of C.C. v. Sec'y of Health & Hum. Servs.*, No. 16-828V, 2018 WL 1559805, at *6 (Fed. Cl. Spec. Mstr. Feb. 26, 2018); *Bales on behalf of J.B.A. v. Sec'y of Health & Hum. Servs.*, No. 15-882V, 2017 WL 2243094, at *3-4 (Fed. Cl. Spec. Mstr. Apr. 26, 2017). Petitioner also requests an hourly rate of $135.00 per hour for work done by paralegals from 2019-2021.

These rates are consistent with such work previously awarded in the Program. Accordingly, I find the requested rates reasonable and that no adjustment is warranted.

---

[3] The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

*ii. Hours Reasonably Expended*

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cl. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Petitioner's counsel has provided a breakdown of hours billed and costs incurred. Fees App., Ex. A. I find the hours to be largely reasonable, however I find a reduction is appropriate for excessive time billed for administrative tasks, such as organizing/updating files,[4] highlighting

---

[4] *See, e.g.*, entry by Mr. Downing of 9/28/2018 (0.3 hours for getting up to speed and "transfer of file"); entry of 3/15/2019 (0.6 hours for compiling materials for expert review); entries by timekeeper DPA on 10/11/2018 (0.3 hours to create login and password and email to prior attorney Mr. Caldwell); 3/15/2019 (0.2 hours to review scheduling order and calendar dates); and 4/11/2019 (assist Mr. Downing in organization and preparation of client documents for transfer to Dr. Boylan).

materials,[5] preparing files for filing with the court,[6] scheduling tasks,[7] time spent learning technology systems,[8] and reviewing CM/ECF entries.[9] Mr. Downing has been warned previously about these billing practices. *See, e.g., Olschansky v. Sec'y of Health & Hum. Servs.*, No. 17-1096, 2020 WL 1027681 at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2020); *Goff v. Sec'y of Health & Hum. Servs.*, No. 17-259V, 2019 WL 3409976, at *4 (Fed. Cl. Spec. Mstr. Mar. 29, 2019); *Sheridan v. Sec'y of Health & Hum. Servs.*, No. 17-669V, 2019 WL 948371, at *3 (Fed. Cl. Spec. Mstr. Jan. 31, 2019); *Moran v. Sec'y of Health & Hum. Servs.*, No. 16-538V, 2019 WL 1556701, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019).

In addition, many of the billing entries contain block billing, where Mr. Downing has lumped several tasks together, making it impossible to know how much time represents an appropriate amount of compensation.[10] Block billing is disfavored in the program. *See, e.g., Castaneda v. Sec'y of Health & Hum. Servs.*, No. 15-1066V, 2018 U.S. Claims LEXIS 1959 (Fed. Cl. Spec. Mstr. June 21, 2018). Indeed, the Vaccine Program's Guidelines for Practice state as

---

[5] *See, e.g.*, entries by Ms. Van Cott of 9/10/2019 (1.5 hours to work with Dr. Boylan to highlight medical literature); 9/11/2019 (1.9 hours to work with Dr. Boylan to highlight medical literature); and 9/12/2019 (1.6 hours to work with Dr. Boylan to highlight medical literature).

[6] *See e.g.*, entries by Mr. Downing of 5/28/2019 (0.1 hours to "review draft Notice of Filing in a supervisory capacity and finalize"); 3/2/2020 (0.1 hours to "review draft Motion for extension of Time in a supervisory capacity and finalize"); and 10/6/2021 (0.1 hours to "Review draft Notice of Filing in a supervisory capacity and finalize."); entries by timekeeper DPA on 916/2019 (four entries on 9/16/2019 totaling 2.2 hours to file medical literature).

[7] *See, e.g.*, entries by Mr. Downing of 12/2/2019 (0.4 hours to correspond with Dr. Boylan regarding her recent hospitalization); 2/7/2020 (0.5 hours to correspond with Dr. Boylan regarding the time needed to provide a rebuttal expert report); 4/1/2020 (0.4 hours to correspond with Dr. Boylan regarding the need for more time); and 8/10/2021 (0.5 hours for a follow up call to the client and to correspond to the DOJ regarding hearing dates).

[8] *See, e.g.*, entries by Mr. Downing of 8/5/2021 (0.7 hours for "call with client; upcoming hearing; doing hearing by Zoom versus in person; status update with medical"); 9/23/2021 (1.10 hours for "initial zoom preparation meeting with client; discussion of hearing; procedure; questions"); 10/4/2021 ("Zoom preparation meeting with Jodi); and 10/20/2021 (0.5 hours for "pre hearing meeting with team; discuss the process for the day; verify everyone is online").

[9] *See, e.g.*, entries by Mr. Downing of 6/4/2020 (0.5 hours for "Receipt and review of Respondent's Status Report and Court's scheduling Order re: same; correspondence to client re: same"); entries by timekeeper DPA on 5/20/2019 (0.2 hours to review CM/ECF notification); 7/23/2019 (0.1 hours to review scheduling order); and 1/2/2020 (0.1 hours to review CM/ECF notification).

[10] *See, e.g.*, entry by Mr. Downing of 9/21/2020 for 0.5 hours, stating "correspondence back and forth with DOJ, client, Dr. Boylan re: potential hearing dates; availability; possibility of settlement." Fees App. Ex. A at 3. While time spent on settlement discussions is compensable, time spent scheduling a hearing and checking availability is not. Because this entry is block billed, it is impossible for the Court to accurately assess how much of Mr. Downing's time spent is compensable.

follows: "[e]ach task should have its own line entry indicating the amount of time spent on that task. Lumping together several unrelated tasks in the same time entry frustrates the court's ability to assess the reasonableness of the request."[11] *Id.* I therefore find that a reduction of **5%** is appropriate in this case.

Total attorneys' fees to be awarded: $62,952.00 - $3,146.60 = **$59,804.40.**

**D. Reasonable Costs**

Petitioner requests a total of $35,337.46 in costs, which includes obtaining medical records, medical literature, postage costs, the Court's filing fee, and expert report fees. Fees App., Ex. A. at 25-36.

   i.  *Petitioner's Expert Costs*

Petitioner requests costs for the work performed by Dr. Laura Boylan. Dr. Boylan billed 45.35 hours for preparation of two expert reports and 24.75 hours for preparation and participation in the two-day entitlement hearing, totaling **$37,050.00**. Ex. A at 14, 18-19. Dr. Boylan has previously been awarded her requested rate of $500.00 per hour and I see no reason to disturb such a request. *See Schultz v. Sec'y of Health & Hum. Servs.*, No. 16-534V, 2018 WL 1835104, at *3 (Fed. Cl. Spec. Mstr. Feb. 16, 2018) (reducing Dr. Boylan's requested hourly rate from $600 to $500/hour); *Patel v. Sec'y of Health & Hum. Servs.*, No. 16-848V, 2019 WL 229681 (Fed. Cl. Spec. Mstr. Apr. 11, 2019); *Goff v. Sec'y of Health & Hum. Servs.*, No. 17-259V, 2019 WL 3409976 (Fed. Cl. Spec. Mstr. Mar. 29, 2019).

Attorneys' costs are subject to the same reasonableness requirements as attorneys' fees. *Apuzzo v. Sec'y of Health & Hum. Servs.*, No. 17-1915V, 2021 U.S. Claims LEXIS 2006 (Fed. Cl. Spec. Mstr. Aug. 23, 2021). Block billing is disfavored in the program. *See, e.g.*, *Castaneda,* 2018 U.S. Claims LEXIS 1959.

The billing records submitted by Dr. Boylan make it difficult to determine with confidence whether the time spent was reasonable.[12] Dr. Boylan has been previously cautioned against such ambiguous billing practices. *See Goff,* 2019 WL 3409976, at *5; *Quirino v. Sec'y of Health & Hum. Servs.*, No. 17-989V, 2020 U.S. Claims LEXIS 1564 (Fed. Cl. Spec. Mstr. July 31, 2020). I have analyzed each of Dr. Boylan's expert reports in turn.

   a.  Dr. Boylan's First Report

---

[11] Guidelines for Practice Under the National Vaccine Injury Compensation Program ("Guidelines for Practice") at 67.

[12] For example, Dr. Boylan spent 16.05 hours in preparing her first expert report. Fees App., Ex. A at 17-18. Of the nine billing entries, seven read either "research" or "report preparation". *Id.*

9

Dr. Boylan's first report was filed on May 28, 2019. Ex. 14, ECF No. 36 (hereinafter "Fiske Report"). Dr. Boylan spent 16.05 hours (billing for 16.1 hours) preparing this report for a total cost of $8,050.00.

At the outset, I note that the majority of her time spent on the first report is billed in a block of 9.5 hours for "report preparation and research"; this makes it impossible to tell how much time Dr. Boylan spent on research, and how much time she spent actually writing the report. *Id.*

Dr. Boylan's report contains 2.5 pages of information regarding her statement of purpose, qualifications, and a background section on vaccines. Ex. 14 at 1-3. There are approximately three pages worth of medical record summaries. Ex. 14 at 4-7. Dr. Boylan's analysis of the case is approximately five pages long, including her conclusion. Ex. 14 at 7-11.

I find the time spent researching and writing this report to be excessive, given the fact that Dr. Boylan's analysis contained in the Fiske Report is virtually identical to the analysis section she submitted in a report filed in *Quirino v. Sec'y of Health & Hum. Servs.,* 2020 U.S. Claims LEXIS 1564 approximately five months prior.

Dr. Boylan has already been compensated for the time she spent researching and writing the expert report in *Quirino*. It would be inappropriate to compensate her a second time for the same work. I therefore will compensate Dr. Boylan for four hours of time for writing the Fiske report.[13]

Dr. Boylan's billing records indicate that she spent one hour reviewing medical records and one hour discussing the case with Mr. Downing. Fees App. Ex. A at 17. I will credit this time in full. In addition, I will credit Dr. Boylan with four hours for her review of medical literature.[14]

Total awarded for Dr. Boylan's first report: 10 hours x $500.00/hour = **$5,000.00.**

    b. Dr. Boylan's Second Expert Report

Dr. Boylan's second report was filed on April 7, 2020. Ex. 37, ECF No. 45. Dr. Boylan billed 29.25 hours to research and write this report. Fees App. Ex. A at 21. This amount of time for a ten-page rebuttal report is excessive in my experience. *See, e.g.*, *Johnson v. Sec'y of Health & Hum. Servs.*, 2021 U.S. Claims LEXIS 2159 at *36 (Fed. Cl. Spec. Mstr. Aug. 13, 2021) (compensating expert for 7.75 hours of work for a single report regarding cranial neuropathy); *Doyle v. Sec'y of Health & Hum. Servs.*, 2021 U.S. Claims LEXIS 2161 at *23 (Fed. Cl. Spec. Mstr. Sept. 1, 2021) (compensating expert for 8.75 hours of work for a single report regarding neurological injuries); *Jackson v. Sec'y of Health & Hum. Servs.*, No. 17-538V, 2019 WL 7560237 (Fed. Cl. Spec. Mstr. Nov. 15, 2019) (awarding $10,875.00 for costs associated with Dr. Steinman's four expert reports and associated literature review). While these cases are factually

---

[13] Further instances of billing practices similar to the one in this case on the part of Dr. Boylan will result in increased reductions in the future.

[14] I note that much of the medical literature reviewed and submitted by Dr. Boylan was also submitted in the *Quirino* case.

different from the case at bar, they document a more typical amount of time an expert spends in preparing and drafting a report. Furthermore, as Special Master Horner noted in *Quirino*, "the conditions at issue in this case - small fiber neuropathy and/or atypical GBS - should fall squarely within Dr. Boylan's experience as an attending neurologist and professor of neurology, suggesting she should already be generally familiar with the relevant literature." *Quirino*, 2020 U.S. Claims LEXIS 1564 at *10. In this case – occurring roughly at the same time frame as *Quirino* – the same reasoning holds true.

Finally, I note that because Dr. Boylan has block billed her time, it is impossible to tell whether the time was reasonably spent (*See, e.g.*, Fees App. Ex. A at 21, containing billing blocks of 6, 12, and 9.5 hours, all described as "report preparation and research."). I therefore will deduct 20% from Dr. Boylan's bill for her second report.

In making this reduction, I have also considered the overall reasonableness of the fees and costs request. Based on my experience in reviewing similarly situated cases, I find that the above-mentioned reductions to Dr. Boylan's time are appropriate both to correct for improper billing, and to reduce the hours billed to reflect the complexity of the case.

Total awarded for Dr. Boylan's second report: $14,625.00 - $2,925.00 = **$11,700.00.**

c. Dr. Boylan's Hearing Costs

Dr. Boylan billed 24.75 hours at $500.00/hour for preparation for and attendance at the hearing. Fees App. Ex. A at 23. I find this amount of time spent to be reasonable and will accordingly award it in full.

Total awarded for Dr. Boylan's hearing costs: **$12,375.00.**

**Total costs awarded for Dr. Boylan: $29,075.00.**

ii. Miscellaneous Costs

Petitioner requests $287.46 in miscellaneous costs. I have reviewed all miscellaneous costs for which compensation is requested as well as the supporting documentation. I note that documentation regarding postage was not provided, other than a notation on the corresponding medical records payment. These postage expenditures parallel the United States postage prices throughout the years and do not seem unreasonable. *See, e.g.*, Fees App. Ex. A at 29. Thus, I award Petitioner's requested costs in full.

Total costs to be awarded: $29,075.00 + $287.46 = **$29,362.46.**

**III. Conclusion**

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$89,166.86**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and her attorney, Andrew Downing.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.

**IT IS SO ORDERED.**

<u>**s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master